**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

EMPIRE REALTY INVESTMENTS, INC.       )
                                      )
      Plaintiff,                    )
                                      )
  vs.                               )     NO. 1:14-cv-380
                                      )
U.S. AFFORDABLE HOUSING, LLC,         )
                                      )
      Defendant.                    )

## OPINION AND ORDER

This matter is before the Court on (1) the Motion for Judgment on the Pleadings filed by Defendant U.S. Affordable Housing, LLC, on December 26, 2014 (DE# 12), and (2) the Request for Oral Argument on Motion for Judgment on the Pleadings filed by Defendant on February 20, 2015 (DE# 26). For the reasons set forth below, Defendant's Motion for Judgment on the Pleadings (DE# 12) is **GRANTED**, and Defendant's Request for Oral Argument on Motion for Judgment on the Pleadings (DE# 26) is **DENIED**. This case remains pending as to Defendant's counterclaims.


BACKGROUND

In November 2014, Plaintiff Empire Realty Investments, Inc. ("Empire") filed a complaint against Defendant U.S. Affordable Housing, LLC ("USAH") in Indiana state court. (DE# 4 at 1-12 ("Compl.").) Attached to the Complaint was an Agreement of Sale executed by Empire and USAH. (DE# 4 at 13-57 ("Agreement").)

-1-

In December 2014, USAH removed the case to federal court and filed its Answer, Affirmative Defenses and Counterclaims. (DE## 1, 10.) USAH then filed the instant Motion for Judgment on the Pleadings. (DE# 12.) Empire filed its Answer and Affirmative Defenses to USAH's Counterclaims in January 2015. (DE# 19.) The parties have fully briefed the instant motion, and USAH requests oral argument. (DE## 22, 25, 26.)

FACTS

The Court accepts as true, as it must when considering a motion for judgment on the pleadings, the following facts alleged in Empire's Complaint. *Forseth v. Village of Sussex,* 199 F.3d 363, 368 (7th Cir. 2000).

On or about July 9, 2014, Empire and USAH entered into an Agreement of Sale ("Agreement"), pursuant to which USAH agreed to sell and Empire agreed to purchase certain real estate for $3,425,000. (Compl. ¶¶ 4, 9; Agreement § 2.) The real estate is located at 407 North Gatewood Drive, City of Marion, County of Grant, Indiana, and includes a 220-unit apartment complex known as Eagle Chase ("Property"). (Compl. ¶¶ 3, 8.)

The Agreement includes several provisions at issue in this case. Section 4 of the Agreement contemplates a period during which Empire was entitled to investigate the Property ("Investigation Period"), and states in part:

A. <u>Investigation</u>.  Commencing on the Agreement Date, [Empire] . . . shall have the right to enter upon the Property to conduct or cause to be conducted upon the Property . . . other physical examinations of the Property as [Empire] may deem necessary, and [Empire] may otherwise do that which, in the opinion of [Empire], is necessary for [Empire] to satisfy itself with regard to the physical condition of the Property and all other aspects of the Property. . . .

B. <u>Right to Terminate in Investigation Period</u>. . . . If [Empire] determines that it is not satisfied for any reason, or no reason, in its sole discretion, with the results of its investigations, or the status of any other condition of or relating to the Property, whether known or unknown on the Agreement Date, and notifies [USAH] in writing of its election to terminate this Agreement, the Initial Deposit shall be returned to [Empire] and this Agreement shall, without any further action by [Empire] or [USAH], become null and void, and all of the parties to this Agreement shall be released from any and all further obligation or liability thereunder.

(Agreement § 4.)

Section 9(A) of the Agreement provides several representations and warranties of USAH:

A. <u>Representations and Warranties of [USAH]</u>.  In order to induce [Empire] to enter into this Agreement and purchase the Property, and with full knowledge that [Empire] is relying thereon, [USAH] hereby warrants and represents to [Empire] as follows. . . .

(5) <u>Condemnation</u>.  There are no condemnation proceedings pending or proposed with regard to the Property.

(6) <u>Notice of Violations</u>.  [USAH] has not received any written notices of violations of any applicable ordinances, regulations, or other laws with respect to the Real Property which are uncorrected [as] of the Agreement Date (the "Violation Notices").

> If any Violation Notices are received by
> [USAH] after the Agreement Date and prior to
> the Closing, [USAH] shall pay the cost of
> complying with such Violation Notices. In
> addition, on or before Closing, [USAH] shall
> deliver any applicable certificate of
> occupancy or use and occupancy permit to
> [Empire] and make any repairs required by
> the applicable municipality for the issuance
> of same.

(Agreement § 9(A).)

Section 10 of the Agreement addresses the conditions precedent to Empire's obligation to purchase the Property, and Empire's options if the conditions precedent are not satisfied on the closing date:

A. Conditions Precedent. The obligation of [Empire] to complete the purchase of the Property from [USAH] in accordance with this Agreement is subject to satisfaction of each of the following conditions (the "Conditions Precedent"), any of which may be waived in whole or in part by [Empire] on or prior to the Closing Date. . . .

(1) [USAH's] Representations and Warranties. Each of the representations and warranties of [USAH] contained in this Agreement shall be true and correct.

(2) Compliance with Covenants. [USAH] shall have performed and complied with all of the terms, conditions and covenants required by this Agreement to be performed and complied with prior to or on the Closing Date.

. . .

B. [Empire's] Rights If Conditions Precedent Are Not Satisfied. If, on the Closing Date, all of the Conditions Precedent to [Empire's] obligations which are set forth in this Agreement have not been satisfied, [Empire's] sole and exclusive option

-4-

shall be to elect to either (1) waive such of those
conditions as are unsatisfied; or (2) terminate this
Agreement and receive a refund of the Deposit,
whereupon this Agreement shall, without any further
action by [USAH or Empire], become null and void,
and all of the parties shall be released from any
and all further obligation or liability thereunder.

(Agreement § 10.)

Section 16(B) of the Agreement addresses the consequences
of a default by USAH:

> B. [USAH's] Default. If [USAH] defaults in the
> performance of any of its obligations hereunder,
> [Empire] shall have the right to either (i)
> terminate this Agreement and receive a refund of the
> Deposit, and [USAH] shall reimburse [Empire] for all
> reasonable, out-of-pocket costs and expenses
> incurred by [Empire] in connection with this
> Agreement, including its due diligence costs and
> costs to complete closing, however in no event shall
> [USAH's] liability exceed Fifty Thousand Dollars and
> [USAH] shall not be liable for circumstances of
> default beyond the control of [USAH], which shall
> include but not be limited to the amount of the fire
> and casualty insurance deductible, or (ii) seek
> specific performance of [USAH's] obligations
> hereunder, such remedies being [Empire's] sole legal
> and equitable remedies.

(Agreement § 16(B).) The Agreement is governed, interpreted and
construed in accordance with the laws of the State of Indiana.
(Agreement § 18(C).) The closing date was to take place sixty
days after the end of the Investigation Period, or December 19,
2014 ("Closing Date"). (Agreement § 6; Compl. ¶ 39 n.1 (Empire
"assumes a Closing Date of December 19, 2014.").)

After the parties entered into the Agreement, Empire
learned of uncured violations of public ordinances, regulations

and other laws with respect to the Property, in violation of the representations and warranties made by USAH. (Compl. ¶ 11.) The violations allegedly included: several uninhabited and uninhabitable apartment units resulting from violations of public health and safety regulations; twenty complaints that Eagle Chase tenants had recently filed with the Grant County Health Department ("Grant County"); and nineteen health code violations found by a Grant County inspector. (*See id.*) According to Empire, these constitute violations of various public ordinances, regulations, and other statutory and common laws with respect to the Property. (*Id.* ¶ 12.)

Empire maintains that USAH received written notices of these alleged violations, but refused to pay the cost of complying with the Violation Notices within the meaning of Section 9(A)(6) of the Agreement. (*Id.* ¶¶ 13, 14.) Empire asserts that USAH has been non-responsive to several complaints, misled Grant County inspectors as to the status of abatement and remediation efforts, and "willfully and purposefully interfered" with efforts by Empire, Grant County, and the City of Marion Building Department ("Marion") to investigate potential additional violations and to determine whether the enumerated violations had been addressed. (*Id.* ¶¶ 15, 16.) According to Empire, Grant County and/or Marion have proposed condemnation proceedings, within the meaning of Section 9(A)(5) of the

Agreement. (*Id.* ¶ 19.) For these reasons, Empire claims that it is exceptionally unlikely that USAH will be able to deliver applicable certificates of occupancy or use and occupancy permits within the meaning of Section 9(A)(6). (*Id.* ¶ 20.)

Empire claims that it demanded that USAH cure the alleged violations, in accordance with its obligations under Section 9(A)(6).[1] (*Id.* ¶ 21.) USAH allegedly refused to do so for three reasons: (1) Empire should have been fully aware of the Property's condition before entering the Agreement; (2) USAH's obligations under the Agreement consist only of "maintaining the Property in the ordinary course of [its] business . . . and present practices"; and (3) Empire caused the Violation Notices by unnecessarily and tortuously involving Grant County and Marion. (*Id.* ¶¶ 22, 24-26.) Empire refutes these reasons, and claims that they are frivolous, unreasonable, groundless, and made in bad faith. (*Id.* ¶¶ 23-26.)

Empire filed the Complaint against USAH on November 12, 2014, several weeks before the Closing Date. The Complaint asserts a claim for specific performance and equitable compensation (Count I), and a claim of bad faith (Count II). (*Id.* ¶¶ 27-42.)

---

[1] Empire admits that it never elected to terminate the Agreement. (DE# 19 at 6 (Empire's Answer to USAH's Countercl. ¶ 24).)

<u>DISCUSSION</u>

<u>Motion for Judgment on the Pleadings</u>

Once a complaint and answer have been filed, a party may file a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007) (citation omitted). The court will grant a Rule 12(c) motion "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Id*. (citations omitted). "A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). Thus, in ruling on a Rule 12(c) motion, the court must accept as true all well-pleaded allegations, viewing them in the light most favorable to the non-moving party, and accept as true all reasonable inferences to be drawn from the allegations. *See R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO,* 335 F.3d 643, 647 (7th Cir. 2003); *Forseth,* 199 F.3d at 368. A court may rule on a judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits. *See* Fed. R. Civ. P. 10(c) ("A copy of a written

instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452–53 (7th Cir. 1998).

Count I:  Specific Performance and Equitable Compensation

USAH's Rule 12(c) motion raises an issue of contract interpretation, specifically, what remedies are available to Empire for USAH's alleged failure to satisfy its representations and warranties under the Agreement.  Indiana law governs the Agreement.  (Agreement § 18(c).)  When interpreting a contract, Indiana courts "begin with the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *CitiMortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012).  The goal is to determine the parties' intent at the time that they made the agreement. *Id*.  If the terms of the contract are clear and unambiguous, then the contract is binding on the parties and the court need only apply the terms of the contract. *Trustcorp Mortg. Co. v. Metro Mortg. Co.*, 867 N.E.2d 203, 212 (Ind. Ct. App. 2007).  "When interpreting a contract, specific terms control over general terms." *Burkhart Advert., Inc. v. City of Fort Wayne*, 918 N.E.2d 628, 634 (Ind. Ct. App. 2009) (citation omitted).

Here, USAH represented and warranted that it "shall pay the cost of complying with [ ] Violation Notices" it received after the date of the Agreement. (Agreement § 9(A)(6).) USAH concedes - for the purpose of this motion only – that this representation and warranty was not accurate. (*See* Compl. ¶¶ 11-14 (alleging USAH received Violation Notices, and failed to pay the cost to cure them).) This representation and warranty constitutes a Condition Precedent to the sale of the Property under Section 10(A) of the Agreement. (Agreement § 10(A)(1).)

USAH relies upon Section 10(B) of the Agreement to argue that Empire's specific performance claim cannot stand. Section 10(B) provides that "[i]f, on the Closing Date, all of the Conditions Precedent to [Empire's] obligations . . . have not been satisfied, [Empire's] *sole and exclusive* option shall be to elect to either (1) waive such of those conditions as are unsatisfied; or (2) *terminate this Agreement and receive a refund of the Deposit*. . . ." (Agreement § 10(B) (emphasis added).) Because USAH's alleged failure to satisfy its representations and warranties is a Condition Precedent, USAH argues that Empire's sole remedy is to waive the condition, or terminate the Agreement and receive its deposit.

USAH relies on *Duckwall v. Rees*, 86 N.E.2d 460 (Ind. Ct. App. 1949), to argue that specific performance is not available as an alternative remedy where a contract specifies the return

of the deposit as a remedy. In *Duckwall*, a contract for the purchase and sale of land provided for liquidated damages and repayment of the down-payment in the event of the seller's breach. The court held that, based on the terms of the contract, the buyer's right to payment was intended to be a substitute for specific performance. *See id*. at 462; *see also Metro Holdings One, LLC v. Flynn Creek Partner, LLC,* 25 N.E.3d 141, 164 (Ind. Ct. App. 2014) (courts "will not invalidate a remedy for which the parties have contracted."). Empire does not contest the applicability of *Duckwall* to this case.

Empire claims that it is entitled to specific performance based on Section 16(B) of the Agreement. (*See* Compl. ¶ 29.) Section 16(B) states that if USAH "defaults in the performance of any of its obligations hereunder, [Empire] shall have the right to either (i) terminate this Agreement and receive a refund of the Deposit [and reimbursement of certain costs and expenses], or (ii) *seek specific performance of [USAH's] obligations hereunder*, such remedies being [Empire's] sole legal and equitable remedies." (Agreement § 16(B) (emphasis added).) Empire seeks specific performance of the sale of the Property, as well as equitable compensation for USAH's representation and

warranty that USAH "shall pay the cost of complying with [the] Violation Notices."[2] (*Id.* § 9(A)(6).)

Empire admits that "under Section 10(B) of the Agreement, [it] is prohibited from alleging unsatisfied Conditions Precedent 'on the Closing Date' in a last minute attempt to renegotiate the Purchase Price or other aspects of the Agreement." (DE# 22 at 11; *see also id.* at 2 (asserting Section 10(B) prevents Empire from "showing up on the Closing Date" and alleging unsatisfied Conditions Precedent).) Empire argues that Section 10(B) does not apply here because the provision is limited to USAH's failure to satisfy the Conditions Precedent "on the Closing Date," and not at any other time. In contrast, no provision limits the timing of the application of Section 16(B). Because Empire filed its Complaint before the Closing Date, Empire insists that Section 16(B), rather than Section 10(B), applies.

---

[2] The equitable compensation portion of Empire's claim is based on its estimate that the cost of curing the Violation Notices is no less than $300,000. (Compl. ¶¶ 37-39.) USAH asserts that the $300,000 is a request for money damages. While the Court need not resolve this issue here, it notes that "as part of a specific performance decree, a trial court may award equitable compensation to adjust the equities of the parties." *UFG, LLC v. Southwest Corp.*, 848 N.E.2d 353, 365 (Ind. Ct. App. 2006) (citations omitted); *see Bohlin v. Jungbauer*, 615 N.E.2d 438, 439 (Ind. Ct. App. 1993) (equitable compensation "equalizes any losses occasioned by the delay" in the contract's performance, and "is considered an accounting between the parties, rather an assessment of damages.").

USAH rejects Empire's interpretation of Section 10(B), arguing that where "both parties acknowledge that a Condition Precedent is not satisfied and will not be satisfied by the time of the Closing Date, nothing in Section 10(B) prohibits Empire from electing its exclusive remedy prior to the Closing Date." (DE# 25 at 4.) USAH points to Section 10(A), which provides that Conditions Precedent "may be waived . . . by [Empire] on *or prior to* the Closing Date." (Agreement § 10(A) (emphasis added).) USAH asserts that this language is consistent with an interpretation of Section 10(B) that permits Empire to elect its "sole and exclusive" remedy prior to the Closing Date. USAH also maintains that Empire's filing of the Complaint a few weeks prior to the Closing Date was a "last minute attempt" to renegotiate the purchase price, which Empire concedes Section 10(B) was structured to avoid.

In construing the Agreement, the Court presumes that all provisions were included for a purpose, and if possible, reconciles seemingly conflicting provisions to give effect to all provisions. *Magee v. Garry–Magee*, 833 N.E.2d 1083, 1092 (Ind. Ct. App. 2005) (citation omitted). The Court must accept an interpretation of the Agreement that harmonizes all the various parts so that no provision is deemed to conflict with, to be repugnant to, or to neutralize any other provision. *Id*. When a contract contains general and specific provisions

relating to the same subject, the specific provision controls. *Id.* The Court may not "write a new contract for the parties or supply missing terms under the guise of construing a contract. Where the subjective intent of the parties is at odds, the text controls. If necessary, the text of a disputed provision may be understood by reference to other provisions within the four corners of the document." *Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC,* 997 N.E.2d 1093, 1098 (Ind. Ct. App. 2013) (citations omitted).

Section 10(B) sets forth Empire's "sole and exclusive" remedies in the specific circumstance of USAH's failure to satisfy Conditions Precedent on the Closing Date. In contrast, Section 16(B) is more general, applying to defaults in the performance of "any of [USAH's] obligations hereunder." Because "specific terms control over general terms," where Section 10(B) applies, it controls over Section 16(B). *Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. Ct. App. 2011).[3]

---

[3] Empire asserts that applying Section 10(B) here "renders Section 16(B) meaningless." (DE# 22 at 11.) But "where one provision is general enough to include the specific situation to which the other is confined, the specific provision will be deemed to qualify the more general one, that is, to state an exception to it." *Aeroground, Inc. v. CenterPoint Properties Trust,* 738 F.3d 810, 816 (7th Cir. 2013) (citations omitted); *see, e.g., Magee*, 833 N.E.2d at 1093 (specific provision indicating that parties are to file joint tax return prevails over general provision regarding waiver of interest and preservation of parties' separate property).

The Agreement does not specifically address whether Section 10(B) applies if both parties acknowledge, prior to the Closing Date, that the Condition Precedent will not be satisfied on the Closing Date. However, Section 10(A) allows Empire to waive a Condition Precedent prior to the Closing Date, demonstrating that the parties intended that Empire could make decisions regarding failed Conditions Precedent prior to the Closing Date. Section 10(A) also provides that USAH has until the Closing Date to satisfy the Conditions Precedent. (*See* Agreement § 10(A)(2) (USAH "shall have performed and complied with *all* of the terms, *conditions* and covenants required by this Agreement to be performed and complied with prior to *or on* the Closing Date." (emphasis added)).)

When Empire filed its Complaint in November 2014, it expected that USAH would not satisfy the Conditions Precedent by the Closing Date. Thus, its specific performance claim is based on USAH's alleged anticipatory breach of the Agreement. (*See also* DE# 19 at 19 (asserting Empire's affirmative defense of anticipatory breach/repudiation).) Empire acknowledges that if it had waited until the Closing Date to claim that USAH failed to satisfy the Conditions Precedent, Empire would have been limited to the remedies in Section 10(B). Because the Agreement terms provide that (1) USAH is not obligated to satisfy its Conditions Precedent until the Closing Date, and (2) Empire has

a specific and limited remedy under Section 10(B) for USAH's failure to satisfy those conditions once they are due, the Court finds that Section 10(B) applies here. To allow Empire to assert its specific performance claim would be to place Empire in a better position than it would have been at the time when USAH's performance on the Agreement was due.[4]

Empire argues that applying Section 10(B) renders the representations and warranties in Section 9(A) illusory and meaningless. The Court disagrees. Section 10(B) provides that if USAH fails to satisfy its representations and warranties under Section 9(A) on the Closing Date, USAH risks Empire's termination of the Agreement and the loss of Empire's deposit. Empire accepted these remedies when it entered into the Agreement. *See Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 49 (Ind. Ct. App. 2005) ("Indiana courts recognize the principle that parties are free to enter into contracts and, indeed, presume that contracts represent the freely bargained agreement of the parties."). These remedies are equally applicable whether Empire filed its Complaint on or before the Closing Date. Other provisions in the Agreement provide these

---

[4] While the Court was unable to locate relevant Indiana case law on this issue, Illinois courts have held that "the remedies for an anticipatory breach cannot be greater than the remedies that would be available to the non-breaching party at the time the breaching party's performance was due." *Pope ex rel. Pope v. Economy Fire & Cas. Co.*, 779 N.E.2d 461, 468 (Ill. Ct. App. 2002).

same remedies for uncorrected defects or Empire's dissatisfaction with the Property's condition before the Closing Date. (*See* Agreement § 4(B) (Empire may terminate the Agreement and receive a refund of its deposit if it "is not satisfied for any reason, or no reason, in its sole discretion, with the results of its investigations, or the status of any other condition of or relating to the Property"); *see also* Agreement §§ 5(A), 13, 14 (allowing Empire to terminate the Agreement and receive a refund of its deposit based on uncorrected title objections, fire, casualty, and condemnation).) While Empire now finds its remedies under Section 10(B) to be insufficient, nothing in its pleadings indicates that the parties did not freely bargain for these terms when they entered the Agreement.

For the reasons set forth above, USAH's motion for judgment on the pleadings as to Count I is **GRANTED.**

Count II:  Bad Faith Claim

Count II of the Complaint seeks compensatory and punitive damages, asserting that USAH engaged in bad faith in the negotiation and performance of the Agreement. (Compl. ¶¶ 40-42.) USAH argues that this claim should be dismissed because Indiana law does not recognize a duty of good faith in the context of an arm's length transaction. *See Allen v. Great Am. Reserve Ins. Co.,* 766 N.E.2d 1157, 1162 (Ind. 2002) (Indiana

does not imply a duty of good faith in every contract). "Bad faith breach of a contract will not support punitive damages unless there is a 'special relationship' between the parties . . . to support imposition of a tort duty." *Andrews v. Mor/Ryde Int'l, Inc.,* 10 N.E.3d 502, 505 (Ind. 2014).

USAH maintains that Empire and USAH are unrelated parties that engaged in an arm's length transaction. *See Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1046–47 (Ind. Ct. App. 2003) ("a business or arm's length contractual relationship does not give rise to a fiduciary relationship"). Empire's complaint does not allege any fiduciary relationship between Empire and USAH. By its silence, Empire concedes that the transaction at issue was an arm's length transaction, and that USAH owed no fiduciary duty to Empire. Because Empire does not allege any special relationship with USAH, its bad faith claim cannot be based on the breach of contract claim.

Instead, Empire relies upon Indiana Code section 34-52-1-1 as the basis for its claim for attorney's fees. Section 34-52-1-1, entitled "General recovery rule," provides in part:

> Sec. 1. . . . (b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

Ind. Code § 34-52-1-1. Empire asserts that the Complaint alleges facts sufficient to establish a prima facie case that some of USAH's defenses are frivolous, unreasonable or groundless, or otherwise in bad faith within the meaning of Section 34-52-1-1(b). Empire points to its allegations that USAH breached its representations and warranties under the Agreement by failing to cure the Violation Notices of public ordinances, regulations and other laws with respect to the Property; misled Grant County inspectors as to the status of its remediation efforts; willfully and purposefully interfered with investigations of violations by Grant County, Marion and Empire; threatened Eagle Chase tenants so that they would not cooperate with Grant County's investigation; caused Marion to obtain search warrants for the Property; withheld information concerning the condition of the Property from Empire; and knowingly and willingly misrepresented the Property's condition to Empire. (*See* Compl. ¶¶ 10-11, 15-18, 24.)

USAH argues that Section 34-52-1-1 is irrelevant because the statute only applies during a civil action, not to positions taken prior to litigation. (DE# 13 at 5 n.1.) The plain

language of Section 34-52-1-1(b) addresses parties' conduct "[i]n any civil action." Here, Empire relies upon conduct that allegedly occurred prior filing its Complaint. None of the alleged conduct supports a conclusion that the *litigation itself* is frivolous, unreasonable, and in bad faith, especially given the fact that Empire bought this lawsuit against USAH. *See Ind. High Sch. Athletic Ass'n, Inc. v. Schafer,* 913 N.E.2d 789, 795 (Ind. Ct. App. 2009) (reversing attorney fee award against IHSAA where no statements prior to litigation could support a conclusion the litigation itself was frivolous, unreasonable, and in bad faith, and where lawsuit had been brought against IHSAA). Thus, the Court finds that Section 34-52-1-1 does not support Empire's bad faith claim.[5]

USAH argues that Empire's punitive damages claim should be dismissed because punitive damages are not available for breach of contract claims. Both parties cite *Dahlin v. Amoco Oil Corp.,* 567 N.E.2d 806 (Ind. Ct. App. 1991), for the proposition that "[t]o recover punitive damages in a breach of contract case, the plaintiff is required to prove by clear and convincing evidence that the defendant's actions in breaching the contract were accompanied by . . . fraud, gross negligence, or oppressive

---

[5] The Court notes that a party is not required to file a claim for attorney fees pursuant to Section 34-52-1-1 prior to final adjudication. *See Davidson v. Boone Cty.,* 745 N.E.2d 895, 900 (Ind. Ct. App. 2001).

-20-

conduct." *Id.* at 810. After *Dahlin*, the Supreme Court of Indiana held that "in order to recover punitive damages in a lawsuit founded upon a breach of contract, the plaintiff *must plead* and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded." *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 984 (Ind. 1993) (emphasis added); *see Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000) (while "[b]reaches of contract will almost invariably be regarded by the complaining party as oppressive, if not outright fraudulent," the claimant must nonetheless prove the independent tort to recover punitive damages). Thus, Empire must establish an independent tort in order to recover punitive damages.

Empire relies upon the same allegations supporting its claim for attorney's fees to assert that the Complaint alleges facts establishing "a prima facie case that USAH acted in a manner that amounts to fraud, gross negligence, and/or oppressive conduct" under *Dahlin*. (DE# 22 at 13 (citing Compl. ¶¶ 10-11, 15-18, 24).) These allegations do not plead a tort independent from Empire's alleged breach of contract claim, as required under *Miller*. Therefore, USAH's motion for judgment on the pleadings as to Count II is **GRANTED**.

<u>Request for Oral Argument on Motion for Judgment on the
Pleadings</u>

USAH requests that the Court hear oral argument on its
motion for judgment on the pleadings. The Court has discretion
to grant or deny a request for oral argument on a motion. N.D.
Ind. L.R. 7-5(c)(1). Because the Court does not find oral
argument necessary to rule on USAH's motion for judgment on the
pleadings, USAH's request for oral argument is **DENIED**.


<u>CONCLUSION</u>

For the reasons set forth above, Defendant USAH's Motion
for Judgment on the Pleadings (DE# 12) is **GRANTED,** and its
Request for Oral Argument on Motion for Judgment on the
Pleadings (DE# 26) is **DENIED**. This case remains pending as to
Defendant's counterclaims.


**DATED: May 19, 2015**          **/s/ RUDY LOZANO, Judge**
                            **United States District Court**